McNEAR v. LEBLOND et al.

(Circuit Court of Appeals, Ninth Circuit. May 11, 1903.)

No. 845.

1. SHIPPING—CONSTRUCTION OF CHARTER—DELAY FOR REPAIRS.

A charter party required the master on tender of the vessel to furnish a certificate that she was properly stowed and dunnaged, and of her good general condition, from charterer's competent surveyor, and provided that in case of dissatisfaction with such certificate by either party the matter should be submitted to arbitration. It further provided that, "should the vessel fail to pass satisfactory survey, or, in case of arbitra-

tion, should the decision be against the vessel, or should she be detained more than 10 days for repairs, this charter to be void at charterer's option, such option to be declared at the expiry of said 10 days." *Held*, that all such conditions authorizing the avoidance of the charter were predicated upon the presumption of previous tender of the vessel to the charterer, and that he could not refuse to accept her when tendered within the time limited by the charter because she had previously taken more than 10 days in making repairs.

2. SAME—RIGHT TO CANCEL CHARTER—ESTOPPEL.

Under a charter provision giving the charterer the option to cancel if the vessel should be detained for more than 10 days for repairs, "such option to be declared at the expiry of said 10 days," if he fails to make such declaration 10 days after the repairs are commenced, but permits them to proceed without objection, he is estopped to make it when the vessel is subsequently tendered after their completion.

8. SAME—BREACH OF CHARTER—MEASURE OF DAMAGES.

Where, on the refusal of a charterer, without legal cause, to accept the vessel, she was at once advertised for charter and rechartered to the same person, for the same voyage, at a lower rate, which voyage she made, the measure of damages for breach of the first charter is the difference between the freight she would have received under such charter and the amount actually earned under the second up to the time when the voyage under the first would have been completed, the expenses of the two voyages being presumably the same; and where the one actually made was under ordinary conditions it furnishes relevant evidence of the time which would have been required under the first charter.

Appeal from the District Court of the United States for the Northern District of California, in Admiralty.

For report below, see 104 Fed. 826.

This is an action in personam for the recovery of damages for an alleged breach of a contract evidenced by a charter party entered into between the parties to the action on September 22, 1896, at Liverpool, England. The libelants were the owners of the French bark Pierre Corneille, and chartered that vessel to the respondent, to proceed at once from Newcastle, N. S. W., where it then was, in ballast, to San Francisco, there to be loaded by the respondent with a cargo of wheat or flour, and proceed thence to a safe port in the United Kingdom or on the Continent, as might be ordered by the charterer's agent. The freight on the cargo was agreed to be at the rate of 30 shillings per ton. The vessel arrived at San Francisco on November 11, 1896, in a somewhat damaged condition, in consequence of having been in collision with the British ship Larnaca on the night prior to her arrival. She was duly inspected by a marine surveyor, proposals for making the necessary repairs were solicited on November 19th, a bid accepted on the 23d, and the repairs commenced on the 24th, being finished on the 30th of the same month. The vessel was tendered to the charterer on December 2d, but not accepted by him, he notifying the master of the vessel of his election to cancel the charter, owing to the length of time used in repairing the vessel. The master then placed the vessel on the market for recharter, and, the respondent making the highest freight offer, the vessel was rechartered to him on December 18th on substantially the same terms and conditions as contained in the original charter party, but at a freight rate of 8 shillings and 9 pence per ton lower. The vessel was then loaded by the respondent, and proceeded on her outward voyage. The owners of the bark then brought the present action to recover the difference in the rate of freight under the original charter and that under the second charter, and for the loss of the vessel's time consequent upon the respondent's refusal to load under the first charter. Judgment was rendered in favor of the libelants for the sum of $6,082.75, from which judgment an appeal was taken to this court.

H. W. Hutton, for appellant.

Milton Andros and Louis T. Hengstler, for appellees.

123 F.—25

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts). The appellant bases his appeal mainly upon two contentions, namely, that he was justified in canceling the charter; and that, if he was not, the damages allowed by the court below are excessive.

The determination of the first question depends solely upon the construction given to the clause contained in the charter party that, should the vessel "be detained more than ten days for repairs, this charter to be void, at charterers' option, such option to be declared at the expiry of said ten days." The court below construed this language as referring to such repairs as might be found necessary after the vessel had been tendered to the charterer, and not to repairs which might be made before such tender. This construction the appellant assigns as error.

A charter party is to be construed in consonance with the rules which obtain in the construction of contracts generally, and no rule of construction is better established than that the intention of the contracting parties must be determined by a consideration of the whole instrument, rather than of any particular clause. The charter party involved in this case is in printed form, with blanks for the writing in of special provisions. It states the parties contracting, the description of the vessel, the object of the voyage, the rates of freight to be paid, and the exemption from liability resulting from acts of God, perils of the sea, etc. Then follows the paragraph containing the clause in question here, as follows:

"Vessel to be properly stowed and dunnaged, and certificate thereof and of good general condition, draft of water, and ventilation to be furnished to charterers from charterers' competent surveyor. If the captain or charterers be dissatisfied with the certificate given, the matter in dispute shall at once be submitted to two other regular port marine surveyors, one chosen by the captain, and one by the charterers, who, if they cannot agree, may call upon a third surveyor. A majority decision and certificate shall determine the matter in dispute, and the cost of said special survey shall be borne by the party against whom said decision may be rendered. Should the vessel fail to pass satisfactory survey, or, in case of submission to arbitration, should the decision be against the vessel, or should she be detained more than ten days for repairs, this charter to be void at charterers' option, such option to be declared at the expiry of said ten days."

This paragraph is apparently one in general use, as the only written portion is the designation of the surveyor who shall furnish the certificate, in the first sentence. This sentence provides for two certificates—one as to the stowage and dunnage of the cargo, the other as to the general condition of the vessel for loading; the latter necessarily preceding the former in point of time. If either of these certificates is satisfactory to the charterer, the terms of the charter party are binding upon him. But there are three conditions stated in the paragraph, upon the happening of either of which the charterer may elect to cancel the charter party: (1) Should the vessel fail to pass satisfactory survey; (2) should a decision be rendered against the vessel, in case of submission of the matter of the sufficiency of the certificate to arbitration; (3) should the vessel be detained more than 10 days for repairs. These three conditions are all made subsequent in

point of time to the survey by the charterer's surveyor, and that survey is to be made when the captain is ready to tender the vessel to the charterer for stiffening. This is apparent from the paragraph following the one quoted, providing that:

"Upon discharge of inward cargo and/or ballast being so advanced as to make stiffening necessary to complete discharge of inward cargo and/or ballast, charterers to furnish the vessel with sufficient cargo for stiffening at discharging wharf, as customary, the captain to give them usual written notice, accompanied by surveyor's certificate, stating that the vessel is ready to take in same, and of the quantity required."

There is nothing in the charter party, in our opinion, to support the contention of the appellant that the 10 days permitted for repairs referred to a time before the tender of the vessel to the charterer. The context of the instrument shows that the clause in question has reference to a survey and certificate that could only be made when the captain was ready to tender the ship; and the conditions with which it is joined are all predicated upon an assumption of previous tender of the vessel to the charterer. This construction not only appears to us to be the reasonable one from the ordinary meaning of the language used and its connection with other provisions, but the practical construction, viewed from the commercial standpoint. The vessel was liable to be in need of repairs more or less extensive after the long voyage from Australia to San Francisco, and it was as much to the interest of the owner as to the charterer that such repairs should be made expeditiously, and the vessel tendered to the charterer for loading. But the charterer must be satisfied that the vessel was safe and suitable for his purpose before loading it; and in this regard the agreement of the parties was that, if the vessel, when tendered, should be in condition that was satisfactory to the charterer, or could be brought to the condition required for his particular purposes within 10 days, it should be accepted by the charterer; otherwise he might cancel the contract, at his option. This clause, it appears to us, should be regarded as a measure of protection to the charterer to insure the proper condition of the vessel. It was to the owner's interest to earn the freightage as soon as possible. It was to the charterer's interest to have a suitable vessel in which to transport the grain, and within a certain time. That the vessel was tendered in ample time for the charterer's purpose is evident from the fact that a provision of the charter party allowed the vessel until December 31, 1896, in which to reach San Francisco. It reached there on November 11th, and was tendered to the charterer on December 2d, 29 days before the expiration of the time allowed. That the condition of the vessel, when tendered, was satisfactory to the charterer is apparent from the fact that he rechartered the vessel on December 18th, and there is no evidence showing that he required any further repairs to be made before loading it. If, then, the vessel was in proper condition, and no delay had occurred beyond the time provided in the agreement, should the charterer be allowed to take advantage of a possible technical uncertainty of language in order to reap a pecuniary benefit by the cancellation of the agreement originally made, and the opportunity to enter into a new charter party

upon lower rates of freightage? We think not. And it is by no means conclusively shown that, giving to the charter party the construction contended for by the appellant, he performed his part of the contract in such manner as to entitle him to exercise the option of canceling it. The language of the charter party is, "should she [the vessel] be detained more than ten days for repairs, this charter to be void at charterers' option, such option to be declared at the expiry of said ten days." The vessel arrived on November 11th. Proposals for repairs were solicited on November 19th, a bid therefor accepted on the 23d, and the work commenced on the 24th, being completed on November 30th. On December 2d the vessel was tendered to the charterer. Up to this time the charterer had made no complaint that too much time was being used for repairs, and had given no notice that he would, therefore, elect to cancel the contract, although he testified that he knew when the ship arrived, and ascertained—possibly at the same time, or possibly later—that repairs were being made on it. In response to the tender of the vessel by the captain, he wrote as follows:

"Referring to charter party dated Liverpool, September 22nd, 1896, your vessel arrived at San Francisco in a damaged condition on November 11th, and you have used twenty-two days in repairing damages, which is largely in excess of the time allowed you under the charter. I therefore elect to cancel said charter, and herewith give you notice to that effect. I return your stiffening notice."

If he believed the clause allowing 10 days for repairs referred to the time before the tender of the vessel, he was in duty bound to declare his option to cancel the contract at the expiration of the 10 days as he calculated them, and not permit 22 days, as he avers, to pass by without any intimation that he would take such action. The appellees were warranted in relying upon the assumption that he had not elected to cancel the contract, and by all the principles of estoppel he was then precluded from seeking the benefit of any privilege he might have had at the earlier date.

There remains to be considered the question of damages—whether the amount assessed by the commissioner, and approved by the court below, was excessive. It was stipulated by the parties that the vessel "left Newcastle, Australia, to fulfill the charter party mentioned in the libel herein, on September 22, 1896, and arrived in San Francisco on November 11, 1896, and sailed from San Francisco with a cargo of wheat on the 26th of January, 1897, and arrived at Falmouth, England, on June 9, 1897, and at Liverpool on June 21, 1897, and finished unloading the said cargo on the 9th day of July, 1897, the same consisting of 1,815 tons and 1,450 pounds in excess thereof." The actual time consumed by the voyage from San Francisco under the second charter was 165 days from time of departure to time of unloading at Liverpool. Estimating the time which would have been consumed by the vessel if the voyage had been made under the first charter, upon the same basis, we have 165 days for the voyage, and 38 days for loading, etc., or 203 days in all. The ship was tendered to the charterer under the first charter on December 2, 1896. Beginning with the day following, December 3d, and calculating 203

days as necessarily occupied before the cargo was delivered at port of discharge, presumptively brings the voyage to an end on June 24, 1897, at which date the vessel should have earned $13,253.22 (1,815 tons 1,450 pounds at 30s. per ton). It had actually consumed but 150 days of the 165 days required for the voyage at that time, and had, therefore, actually earned but $8,534.81 ($^{150}/_{165}$ of $9,388.29, the total amount received under second charter, at the rate of 21s. 3d. per ton). Deducting the amount actually earned from the amount which would have been earned under the original charter leaves a deficit of $4,718.96 in the earnings of the ship at this date by reason of the failure to carry out the terms of the original charter party. The court below decreed this amount to be due the libelants as damages, adding interest at the rate of 6 per cent. per annum from June 24, 1897, the presumptive date when the full amount would have been due the libelants; making the total amount decreed to be paid $6,082.75. This calculation was made in accordance with the settled rule for estimating damages in this class of actions, namely, that the shipowner is entitled to the net amount that would have been earned under the charter sued on, less the net amount actually earned, or which might, with reasonable diligence, have been earned, by the vessel during the time required for the voyage named in such contract of charter. The Gazelle and Cargo, 128 U. S. 474, 487, 9 Sup. Ct. 139, 32 L. Ed. 496; Smith v. McGuire, 3 Hurl. & N. 554. We find no error in the assessment of damages.

The decree of the District Court is affirmed.